Wayne E. **PIERSON** and Ruth E. Pierson, Plaintiffs-Appellees,

v.

**DEAN, WITTER, REYNOLDS, INC.,** Defendant-Appellant.

No. 83–1568.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1984.

Decided Aug. 6, 1984.

As Amended Aug. 24, 1984.

Gregg N. Grimsley, Vonachen, Cation, Lawless, Trager & Slevin, Peoria, Ill., for plaintiffs-appellees.

Timothy L. Bertschy, Hely, Royster, Voelker & Allen, Peoria, Ill., for defendant-appellant.

Before BAUER, WOOD, and COFFEY, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

This is an interlocutory appeal taken pursuant to 28 U.S.C. § 1292(a)(1) by Dean, Witter, Reynolds, Inc., defendant-appellant, from a district court order denying Dean Witter's motion to stay four common

law causes of action for arbitration.[1] Plaintiffs-appellees Wayne E. Pierson and Ruth E. Pierson brought these common law claims pendant to another claim challenging an alleged violation of the Securities Exchange Act of 1934. We reverse.

## I.

In 1977, the Piersons opened a non-discretionary margin account with Dean Wit-

**1.** Neither party discussed or contested the jurisdiction of this court. We note by way of clarification, however, that an interlocutory appeal from an order in a situation like this is allowed under the "Enelow-Ettelson" doctrine if: (1) the underlying action is one which would have been an action at law before the merger of law and equity; and (2) the stay was sought to permit the interposition of an equitable defense. *See Microsoftware Computer Systems v. Ontel Corp.,* 686 F.2d 531, 535 (7th Cir.1982); *Whyte v. THinc Consulting Group International,* 659 F.2d 817, 818–19 (7th Cir.1981). Both requirements are met in this case. *See Microsoftware Computer Systems,* 686 F.2d at 535 (arbitration is an equitable defense).

In *Timberlake v. Oppenheimer & Co.,* 729 F.2d 515 (7th Cir.1984), we held "that an order refusing ... a stay of arbitration is not appealable under section 1292(a)(1)." *Id.* at 518. *Timberlake,* however, is clearly distinguishable because of a significant difference in the nature of the district court order being appealed. In *Timberlake,* as in the case before us now, the plaintiff sued a brokerage firm, alleging violations of federal securities law, and joining pendant state law claims. But in *Timberlake,* the district court ordered arbitration of the state law claims—the stay he refused was a stay of his arbitration order. Thus, in *Timberlake,* the parties were not arguing on appeal about whether the pendant claims were arbitrable; rather, they were arguing about whether arbitration should be stayed pending resolution of federal securities claims. By contrast, the district court in the present case held that the state law claims were *not* arbitrable—the stay he refused was not a stay of an arbitration order; the judge refused to stay a trial on the merits in federal court of the pendant state law claims. If this order is allowed to stand, the district court will try the state law claims.

"[T]he 'unjustified wast[ing] of scarce judicial resources' has often been an important factor in deciding whether to allow interlocutory appeals.... [A] decision not to stay is effectively unreviewable on appeal from a final judgment [because t]here is simply no remedy for the wasting of time and resources once it has occurred." *Microsoftware Computer Systems,* 686 F.2d at 534 (quoting *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 378, 101 S.Ct. 669, 675,

ter for security trading. The Piersons signed a printed form contract entitled "Customers Agreement." In pertinent part, that agreement provides for arbitration of any controversy "arising out of or relating to this contract or breach thereof." In addition, the contract specifies that the laws of the State of New York govern the contract and its enforcement.[2]

66 L.Ed.2d 571 (1981)). Policy reasons therefore support our decision to distinguish the "refusal to stay" in this case (a refusal to stay proceedings in the district court), from the "refusal to stay" in *Timberlake* (a refusal to stay arbitration), and to allow this appeal.

For a nearly identical fact situation in which the Ninth Circuit allowed an interlocutory appeal, see *Byrd v. Dean Witter Reynolds, Inc.,* 726 F.2d 552, 553 (9th Cir.1984), *cert. granted on other grounds,* ___ U.S. ___, 104 S.Ct. 3509, 82 L.Ed.2d 818 (1984).

**2.** The contract in pertinent part provides:

Any controversy between you [Dean Witter] and the undersigned [Piersons] arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, as the undersigned may elect. If the undersigned does not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then the undersigned authorizes you to make such election in behalf of the undersigned. Any arbitration hereunder shall be before at least three arbitrators and the award of the arbitrators, or a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

This Agreement and its enforcement shall be governed by the laws of the State of New York and its provisions shall be continuous, shall cover individually and collectively all accounts which the undersigned may open or re-open with you, and shall enure to the benefit of your present organization, and any successor organization, irrespective of any change or changes at any time in the personnel thereof, for any cause whatsoever, and of the assigns of your present organization or any successor organization, and shall be binding upon the undersigned and/or the estate, executors, administrators and assigns of the undersigned.

Count I of the Piersons' amended complaint alleges a violation of Rule 10b–5 of the Securities Exchange Act of 1934. Counts II through V charge common law violations sounding in breach of fiduciary duty, negligence, gross negligence, and fraud.[3] The Piersons requested a trial by jury on all counts, and, in addition to actual damages, the Piersons seek exemplary damages on the common law counts, except on the count alleging negligence. Dean Witter filed a motion to dismiss the common law counts or, in the alternative, to stay the common law actions for arbitration, as provided in the contract.

The court denied Dean Witter's motion on March 7, 1983. As the same issues had been raised by a similar motion directed to the original complaint, the parties and this court assume that the explanation the trial judge gave at the time he denied the original motion remained his basis for dismissal of the second motion. Judge Mihm had

stated that he was not convinced that the arbitration agreement reached allegations of fraud and breach of fiduciary duty, and that he was not satisfied that the Piersons had knowingly waived their right to a possible award of punitive damages, which are not available under New York law through arbitration, since punitive damages are not specifically mentioned in the contract.[4]

## II.

### A

Dean Witter argues that the Piersons' common law allegations are controversies that "arise out of or relate to" the contract and therefore are subject to the contract's arbitration provision. Dean Witter concludes that the district court was obligated to stay all counts except the alleged Rule 10b–5 violation and to compel their arbitration. We agree, although we appreciate Judge Mihm's desire to avoid the possibility

3. The alleged wrongful actions of Dean Witter generally underlying all the common law counts as well as the federal securities count can be summarized:

    (a) Maintained the account in a reckless manner, giving no consideration to the proper safeguarding of said account;

    (b) Recklessly and fraudulently ignored Plaintiffs' requests that the errors that occurred in said account be rectified;

    (c) Recklessly failed to institute procedures that would insure that the proper receipt and transmissions of orders occurred;

    (d) Recklessly and wilfully failed to investigate the on-going problems regarding the account and otherwise totally failed to supervise the personnel charged with the responsibility of safeguarding the account;

    (e) Wilfully, fraudulently and recklessly failed and refused to audit Plaintiffs' account;

    (f) Wilfully and recklessly engaged in unauthorized transactions;

    (g) Wilfully, fraudulently and recklessly made calls on Plaintiffs, and liquidated Plaintiffs' account when such actions were not legally required by any rule of any exchange, or law;

    (h) Wilfully and recklessly destroyed, at a time when arbitration proceedings had been filed by Defendant against Plaintiffs regarding an amount allegedly due on the account; trading records that Defendant is required by law to maintain, or are commonly maintained by industry practice, relating to Plaintiffs' account;

\*    \*    \*    \*    \*    \*

    (i) Wilfully and recklessly destroyed all other account documents, including but not limited to memoranda, correspondence opinions and other writings concerning Plaintiffs' account or account relationship with Defendant.

4. Judge Mihm stated in full:

The Agreement also provides that the laws of the State of New York govern its enforcement. Because under New York law punitive damages are unavailable in an arbitration award, *Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 386 N.Y.S.2d 831; 353 N.E.2d 793 (Ct.App.1976), Dean, Witter argues that the Piersons have knowingly waived their right to a full legal remedy. I cannot agree.

First, I am not convinced that the wording of the arbitration provision would ordinarily and reasonably be construed to cover such claims as fraud and breach of fiduciary duty. Although there are cases which hold otherwise, *Baselski v. Paine, Webber, Jackson & Curtis, Inc.,* 514 F.Supp. 535 (N.D.Ill.1981) and *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 558 F.2d 831 (7th Cir.1977), based on the facts in this case I am not persuaded that the arbitration provision applies.

In addition, the Piersons agreed to arbitrate under New York law, but they did not specifically agree to waive their right to full legal remedy including punitive damages. Because they did not specifically agree to waive their right to punitive damages, I cannot thrust that harsh result upon them. See 551 F.Supp. 497.

of a result perceived to have some potential unfairness for the Piersons.

■ As we know, arbitration clauses are regarded with favor. *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 558 F.2d 831, 833 (7th Cir.1977). Where less than all the alleged claims are arbitrable, and here the Rule 10b–5 claims is concededly not arbitrable, the court may proceed with the non-arbitrable claims, but the court is obliged to honor the arbitration clause agreed to by the parties and to lay aside the arbitrable claims. *See Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638, 644 (7th Cir.1981).

■ The arbitration clause in this case is broadly worded and encompasses any controversy arising out of or relating to the contract or its breach. Claims of fraud under a contract, breach of fiduciary duty, negligence, and gross negligence are not immune from arbitration under a broadly-worded valid arbitration clause. *See In re Oil Spill by Amoco Cadiz*, 659 F.2d 789, 794 (7th Cir.1981) (tort claims arbitrable under contract arbitration clause); *cf. Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 350 (7th Cir.1983) (under broadly-worded clause, even validity of contract itself is subject to arbitration). These common law causes of action obviously are controversies that arise out of and relate to nothing other than the Piersons' contract, which defines the business relationship between them and Dean Witter. The fraud alleged is fraud under the contract; the Piersons do not allege that the arbitration clause was induced by fraud. *See Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967) (in passing on an application to stay for arbitration, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate"). The fraud claim in this case therefore is arbitrable, *Blumberg v. Berland*, 678 F.2d 1068, 1071 (11th Cir.1982), as are the other common law claims, *Baselski v. Paine, Webber, Jackson & Curtis, Inc.*, 514 F.Supp. 535, 539, 543 (N.D.Ill.1981) (breach of fiduciary duty); *see also In re Oil Spill by Amoco Cadiz*, 659 F.2d at 794 (common law tort claims).

These types of actions could have been specifically excepted, but were not. To except from the arbitration clause what the Piersons now want excepted would leave the clause anemic. The Supreme Court has emphasized that when there is a broad arbitration clause, "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail ...." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960); *see also Randall v. Lodge No. 1076, International Association of Machinists*, 648 F.2d 462, 467 (7th Cir.1981). The Piersons have not presented any evidence of a purpose to exclude common law claims from arbitration under their contract. Perhaps the Piersons did not fully appreciate all the ramifications of the plain wording of the arbitration clause, which include losing the right to a jury trial on the arbitrable issues and losing the possibility of obtaining punitive damages, but we cannot reform the clause to the Piersons' satisfaction.

Citing *Fuller v. Guthrie*, 565 F.2d 259 (2d Cir.1977), the Piersons argue that the arbitration clause should not be binding unless they consciously agreed to arbitrate the common law claims. In *Fuller*, Arlo Guthrie, a well-known folksinger, had announced from the stage that he and others were not being paid and that the plaintiff had cheated the audience. The court held that the subsequent complaint arising from Guthrie's failure to complete the concert was covered by the arbitration clause contained in his performance contract, but that the resulting slander claim against Guthrie was not subject to arbitration. The court explained that the slander claim fell "far beyond" the intended scope of the performance contract's arbitration clause. *Id.* at 261. We cannot say that the Piersons' common law claims fall "far beyond" their

investment contract. The Piersons complain about the way Dean Witter handled their account. The resulting common law claims, which relate directly to the performance expected of Dean Witter, do not arise from "wholly unexpected tortious behavior," *id.* at 261, as did the claim against Guthrie for making allegedly slanderous comments during a musical concert.

### B

■ Next, the Piersons argue that if the terms of the contract require arbitration of common law claims, the contract is unconscionable and one-sided in favor of Dean Witter, the stronger party. The Piersons failed, however, to plead unconscionability to the district court. The court apparently raised the question on its own, refusing to enforce the arbitration clause because of its perception that forfeiture of the right to pursue punitive damages is a "harsh result." However, without any indication in the record that the Piersons even alleged, much less proved, that they were forced to unknowingly forfeit their rights in an unfair manner, we cannot uphold the district court's finding that the arbitration clause is unconscionable.[5] *See Dow Corning Corp. v. Capitol Aviation, Inc.,* 411 F.2d 622, 627 (7th Cir.1969) (before finding contract clause unconscionable, court should have held hearing on that question). The Piersons have now briefed and argued unconscionability, but we still see no basis for application of that doctrine.

■ The purpose of the unconscionability doctrine is to prevent unfair surprise and oppression. *FMC Finance Corp. v. Murphree,* 632 F.2d 413, 420 (5th Cir.1980); *Leasing Service Corp. v. Broetje,* 545 F.Supp. 362, 366 (S.D.N.Y.1982). The Piersons claim to be the weaker party, without a choice but to execute the contract. Even if we accept that claim as true, that one party enjoys little bargaining power is not itself sufficient reason to declare a contract provision unconscionable. *T.A. Moynahan*

*Properties, Inc. v. Lancaster Village Cooperative, Inc.,* 496 F.2d 1114, 1119 (7th Cir.1974). The Piersons have submitted no evidence that the clause is commercially unreasonable or that the Piersons lacked a reasonable opportunity to understand it. *See Williams v. Walker-Thomas Furniture Co.,* 350 F.2d 445, 449–50 (D.C.Cir. 1965); *Leasing Service Corp. v. Broetje,* 545 F.Supp. at 366; *Contract Buyers League v. F & F Investment,* 300 F.Supp. 210, 227 (N.D.Ill.1969), *aff'd,* 420 F.2d 1191 (7th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 42, 27 L.Ed.2d 49 (1970). We know nothing of the Piersons' sophistication or experience. The only thing we can safely conclude from the meager record before us is that the Piersons are individual investors and Dean Witter is a large investment brokerage firm. Contract law would lose much of its meaning if unfavorable contract provisions could be challenged merely on the basis of the relative size of the contracting parties.

Perhaps the Piersons did not realize that punitive damages are not permitted in arbitration under New York law (we cannot tell from the record before us), but they were aware that the law of New York was to apply exclusively. Similarly, though *perhaps* not contemplated by the Piersons when they signed the contract, loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate. The Piersons cannot use their failure to inquire about the ramifications of that clause to avoid the consequences of agreed-to arbitration. We decline to hold the arbitration provision unconscionable without the support of any evidence beyond mere allegations of unfairness contained in an appellate brief.

### C

■ Some courts hold that when non-arbitrable federal securities claims are inextricably intertwined with arbitrable contract claims arbitration should be denied on all counts in order to preserve exclusive

---

**5.** Beyond the district judge's brief order, *see supra* note 3, absolutely nothing in the record we have before us relates to the question of unconscionability, and there is no indication that the judge held a hearing or even accepted evidence from either party on this issue.

340

jurisdiction over the federal securities act issues. *Sibley v. Tandy Corp.*, 543 F.2d 540, 543 (5th Cir.1976), *cert. denied*, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); *see also Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1026 (11th Cir.1982); *De Lancie v. Birr, Wilson & Co.*, 648 F.2d 1255, 1258 n. 4 (9th Cir.1981) (dicta); *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1030–31 (6th Cir.1979). Only recently, in *Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638, 643–46 (7th Cir.1981), this court took a different view, approving separation of claims in order to permit specifically agreed-to arbitration so that the policy favoring arbitration would not be defeated. The Piersons ask us to reconsider our position, but we decline to overrule *Dickinson*. The trial court may avoid collateral estoppel and thereby protect its jurisdiction in difficult cases by staying arbitration of the arbitrable claims until federal securities act claims are resolved.

Our holding, though unfavorable to the Piersons, does not leave them without a remedy; it only limits the remedy and changes the forum in which they may air their common law complaints.

REVERSED AND REMANDED. Circuit Rule 18 shall not apply.