Antonio C. MASTROBUONO and Diana G. Mastrobuono, Plaintiffs–Appellants,

v.

SHEARSON LEHMAN HUTTON, INC., a corporation, Nick DiMinico, Richard F. Benzer and Mark Stevenson, Defendants–Appellees.

No. 93–1581.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 26, 1993.

Decided March 30, 1994.

selling was a controlled substance.

Peter J. Karabas, James L. Fox, Donald P. Colleton (argued), Abramson & Fox, Chicago, IL, for plaintiffs-appellants.

Thomas M. Knepper, Robert J. Mandel (argued), Therese M. Obringer, Neal, Gerber & Eisenberg, Chicago, IL, for defendants-appellees.

Before BAUER and COFFEY, Circuit Judges, and SKINNER, District Judge.*

SKINNER, District Judge.

An arbitration panel awarded $400,000 in punitive damages to the customers of a brokerage firm on their claims of unauthorized trading, churning, and margin exposure. The district court vacated the award because New York law, the governing law chosen by the parties, does not permit arbitrators to award punitive damages. We affirm.

In October 1985, the plaintiffs-appellants, Antonio and Diana Mastrobuono ("plaintiffs"), opened a brokerage account with Shearson Lehman Hutton, Inc. ("Shearson"). The plaintiffs are Illinois residents. Nick DiMinico, a vice president and licensed representative of Shearson in its Houston, Texas office, solicited and serviced the plaintiffs' account. Although Shearson's principal place of business is in New York, the most significant contacts in this case were with Illinois.

Paragraph 13 of the Client Agreement between plaintiffs and Shearson provides:

This agreement ... shall be governed by the laws of the State of New York.... [A]ny controversy arising out of or relating to [the plaintiffs'] accounts ... shall be settled by arbitration in accordance with the rules then in effect, of the National Association of Securities Dealers, Inc. or the Board of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange Inc. as [the plaintiffs] may elect....

In January 1989, the plaintiffs filed suit in the United States District Court for the Northern District of Illinois, claiming that the defendants had subjected their account to unauthorized trading, churning, and margin exposure. Plaintiffs stated federal claims and state statutory and tort claims; they requested punitive damages on the state claims. In April 1989, Shearson moved to compel arbitration before the National Association of Securities Dealers ("NASD"). The district court granted the motion.

The plaintiffs filed an amended complaint in arbitration, alleging violations of the NASD Rules of Fair Practice, SEC Rule 10b-5, § 15-1 of the Securities Exchange Act, the Illinois Consumer Fraud Act, the Texas Deceptive Trade Practices–Consumer Protection Act, breach of fiduciary duty and negligence. The plaintiffs again sought punitive damages under the state law claims, including treble and punitive damages under the Texas statute. Hearings on all of the claims were held in Chicago, Illinois on August 11–12 and September 29, 1992 before a panel of three arbitrators. On the last day of the hearings, after the close of proofs, Shearson submitted a Memorandum Regarding Claim for Punitive Damages, arguing that the panel had no authority to award punitive damages. The panel accepted the filing and permitted plaintiffs to file a reply memorandum.

The panel awarded the plaintiffs $115,-274.00 for commissions and $44,053.00 for margin interest "as satisfaction for their claims." Shearson has paid the compensatory damages portion of the award. The panel also awarded $400,000 in punitive damages. Shearson filed a motion in the district court to vacate the award of punitive damages because New York law, the governing law of the Client Agreement, precludes an arbitral award of punitive damages. The plaintiffs moved to confirm the award, or in the alternative for a trial on the amount of punitive damages to be awarded, or as a further

* Hon. Walter Jay Skinner of the District of Massa- chusetts, sitting by designation.

alternative for a trial on the punitive damages claims.

The district court denied the plaintiffs' motion and vacated the award of punitive·damages under § 10(a)(4) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(4). 812 F.Supp. 845 (N.D.Ill.1993). The court held that the plaintiffs had "contractually waived any potential award of punitive damages in arbitration," *id.* at 846, and that the arbitrators exceeded their power by making the award. The court denied the motion to sever the punitive damages claims for trial because punitive damages were precluded by the arbitration agreement, and because neither Illinois nor New York law permits a separate cause of action solely for punitive damages. This appeal followed.

## SHEARSON'S WAIVER

■ The plaintiffs argue that Shearson waived its objections to the claim for punitive damages by not raising the issue until the proofs in arbitration had closed. We disagree. The plaintiffs had an opportunity to respond to Shearson's late submission, and they certainly were not prejudiced in any way. The arbitrators and the district court had the opportunity to consider the arguments of both parties.

## DISCUSSION

### I. Scope of review

■ We first address plaintiffs' argument that the district court violated the standard of review imposed by the Federal Arbitration Act. In relevant part, § 10(a)(4) of the FAA permits a court to vacate an award "[w]here the arbitrators exceeded their powers." The arbitrator's errors of law and contract construction are normally unreviewable under this standard. *Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.*, 935 F.2d 1501 (7th Cir.1991). However, our narrow scope of review does not immunize an award clearly unauthorized by the terms of the agreement. *See Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159, 1164 (7th Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985) (court may reverse award

that "clearly" was not "within the contemplation of the parties and ... implicitly authorized by the agreement"). As the Court of Appeals for the Second Circuit has observed, where the arbitrators are not entitled to award punitive damages due to a choice of law provision in the parties' agreement, it is "manifest" that the arbitrators would exceed their powers by awarding punitive damages. *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 122 (2d Cir.1991). "[T]here is no clearer case of a case falling ... within" § 10(a)(4) of the Act. *Id.* The district court properly reviewed the panel's authority to award punitive damages.

### II. Enforcement of the arbitration agreement

■ The FAA created "a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983). Because there is a "liberal federal policy favoring arbitration agreements," *id.* at 24, 103 S.Ct. at 941, courts should "liberally construe the scope of arbitration agreements." *Mitsubishi Motors v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). Doubts concerning "the scope of arbitrable issues" should be resolved in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. at 941–42. However, the federal policy "is simply to ensure the enforceability, *according to their terms*, of private agreements to arbitrate." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989) (emphasis added). We may not rewrite the agreement to enhance arbitrability or otherwise expand the scope of the arbitrator's powers.

■ Under New York law, the governing law of the agreement, arbitrators may not award punitive damages. *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 386 N.Y.S.2d 831, 831–32, 353 N.E.2d 793, 794 (1976). The plaintiffs argue at length that the Garrity rule as applied to the agreement is preempted by the FAA. Preemption becomes an issue only if the parties intended to

arbitrate on terms foreclosed by applicable state law:

> Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward. By permitting courts to "rigorously enforce" such agreements according to their terms ... we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind the FAA.

*Volt*, 489 U.S. at 479, 109 S.Ct. at 1256. Here the parties agreed to arbitrate all of their controversies under New York law. By choosing New York law without excluding its arbitration rules, the parties adopted *Garrity* as a binding rule.

In *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334 (7th Cir.1984), we examined a brokerage agreement that also compelled arbitration of all controversies under New York law. Although the plaintiffs in *Pierson* may not have realized that "the plain wording of their arbitration clause" precluded any award of punitive damages, we held that "the Piersons cannot use their failure to inquire about the ramifications of that clause to avoid the consequences of agreed-to arbitration." *Id.* at 338–39.

■ Notwithstanding *Pierson*, the plaintiffs argue that the *Garrity* rule is inapplicable here because the agreement does not expressly bar punitive damages. Paragraph 13 of the agreement provides that "any controversy arising out of or relating to" the plaintiffs' account "shall be settled by arbitration." According to the plaintiffs, a demand for punitive damages is a "controversy" which, in the absence of an express exclusion from a broad arbitration clause, must be submitted to arbitration.

We do not think the *Garrity* rule can be characterized as a specific exclusion from the arbitration agreement. Submission to New York law is a general condition upon the arbitration of all "controvers[ies]" between the parties. Because any condition imposed by New York law can be found in the books,

a choice of law provision suffices to incorporate the *Garrity* rule. By contrast, specific exclusions must be stated in the arbitration agreement because they cannot be gleaned from another source.

■ In *Pierson*, we did not address the argument that some other provision of the agreement authorized punitive damages, *contra* the choice of New York law. The plaintiffs argue that the arbitration rules of the NASD incorporated by reference in ¶ 13 of the agreement, expressly authorize arbitrators to award punitive damages.

The NASD Code of Arbitration Procedures is "prescribed and adopted ... for the arbitration of any dispute, claim or controversy" connected with the business of an NASD member. § 1. Section 41(e) of the Code states that the arbitral award "shall contain ... a summary of ... the damages and other relief awarded." Neither of these procedural provisions confers a substantive right to a particular type of damages. *Cf. Fahnestock & Co., Inc. v. Waltman*, 935 F.2d 512, 518 (2d Cir.1991) (the *Garrity* rule is a rule of state substantive law).

Unlike the Code of Arbitration Procedures, the NASD Arbitrator's Manual specifically addresses punitive damages:

> B. Punitive Damages
>
> The issue of punitive damages may arise with great frequency in arbitrations. Parties to arbitration are informed that arbitrators can consider punitive damages as a remedy.

We do not think that this provision of the Manual authorizes an award of punitive damages in derogation of the governing law of the agreement. New York law applies no matter which set of arbitral rules the plaintiffs happen to choose. The Court of Appeals for the Second Circuit has held that the arbitration rules of the New York Stock Exchange—which were also available to the plaintiffs—do not empower arbitrators to award punitive damages. *Fahnestock*, 935 F.2d at 519. We do not think the parties intended the availability of punitive damages to vary with the plaintiffs' choice of arbitration rules. The more sensible construction of

the agreement is that the *Garrity* rule always controls, whether the plaintiffs choose NASD, NYSE, or American Stock Exchange rules.

■ For the same reasons, the NASD Rules of Fair Practice do not override the parties' choice of New York law. Section 21(f)(4) of the Rules provides that "[n]o agreement shall include any condition which ... limits the ability of the arbitrators to make *any* award" (emphasis added). To the extent that this provision conflicts with New York law, the governing law of the agreement under all circumstances, we must conclude that the parties intended to be bound by New York law.

The plaintiffs urge us to resolve any conflict between the NASD rules and New York law in favor of the award of punitive damages. That is not quite what federal policy requires. *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. at 941–42, states that "any doubts concerning the *scope of arbitrable issues* should be resolved in favor of arbitration" (emphasis added). The Client Agreement does not purport to withhold certain issues from arbitration. In fact, it refers all "controvers[ies]" to arbitration—subject always to the strictures of New York law. We think the policy favoring arbitrability applies with less force when there are doubts concerning the availability of punitive remedies—as opposed to the "scope of arbitrable issues." *Cf. Independent Employees' Union v. Hillshire Farm Co.*, 826 F.2d 530, 535 (7th Cir.1987) ("[t]his court and other arbitrators have recognized that arbitral remedies, with few exceptions, may not be punitive"). Just as the FAA does not favor or disfavor arbitration under a given set of procedural rules, *Volt*, 489 U.S. at 476, 109 S.Ct. at 1254, neither does it favor or disfavor any particular type of remedy. We construe the arbitration agreement liberally, as we must, but we need not automatically resolve all doubts so as to authorize punitive damages.

We recognize that some circuit courts have reached a different result. *See Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378 (11th Cir.1988); *Raytheon Co. v. Automated Business Systems, Inc.*, 882 F.2d 6 (1st Cir. 1989); *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056 (9th Cir.1991); *Lee v. Chica*, 983 F.2d 883 (8th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 287, 126 L.Ed.2d 237 (1993). We prefer to follow the implications of our decisions in *Pierson* and *Hillshire Farm, supra*. Unlike the First, Eighth, Ninth, and Eleventh Circuits, we draw a distinction between the scope of arbitrable issues and the availability of punitive remedies. We resolve any apparent conflict between New York law and the NASD rules in favor of New York law, the generally applicable law of the agreement. *Cf. Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 122 (2d Cir.1991) (vacating arbitral award of punitive damages because "the parties elected to abide by 'the laws of the State of New York' in the event of a dispute under the Agreement").

Given our conclusion that the parties wished to arbitrate all of their disputes subject to *Garrity*, there is no need to consider whether the *Garrity* rule is preempted by the FAA or by the federal common law "govern[ing] the construction of arbitration agreements," *Raytheon*, 882 F.2d at 11 n. 5. "Interpreting a choice-of-law clause to make applicable state rules governing the conduct of arbitration ... does not offend the rule of liberal construction set forth in *Moses H. Cone*, nor does it offend any other policy embodied in the FAA." *Volt*, 489 U.S. at 476, 109 S.Ct. at 1254. We also reject the plaintiffs' contention that the district court should at least have severed the punitive damages claims for trial. Under the plain language of the agreement, the plaintiffs are entitled only to the damages available in arbitration under New York law.

### III. Conflict of laws

■ The plaintiffs argue that the choice of law provision includes all New York law, even its conflict of laws principles. According to the plaintiffs, the district court erred by not applying New York conflicts law, which would have "bounced" the applicable law from New York back to Illinois. We disagree. In *Sarnoff v. American Home Products Corp.*, 798 F.2d 1075, 1080 (7th Cir.1986), where the contract also specified New York law, we observed that a federal

court sitting in diversity should apply the conflicts law of the forum state. We have also held that in federal question cases, "the choice-of-law rule for pendent state claims should be that of the forum." *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 681 (7th Cir.1986), *cert. denied*, 480 U.S. 941, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987). Applying New York conflicts law to the state claims here would "[re]introduce the uncertainties of choice of law" and "defeat the basic objectives, namely those of certainty and predictability, which the choice-of-law provision was designed to achieve." Restatement (Second) of Conflict of Laws § 187(3), comment h (1988).

Under Illinois conflicts law, we may enforce the parties' chosen law if it is not "dangerous, inconvenient, immoral, [or] contrary to the public policy" of Illinois. *McAllister v. Smith*, 17 Ill. 328, 333 (1856). The plaintiffs argue that the *Garrity* rule is contrary to Illinois public policy because Illinois permits arbitrators to award punitive damages. As we noted in *Sarnoff*, 798 F.2d at 1081, Illinois courts have enforced the parties' choice of foreign law even where that law is arguably inconsistent with an Illinois statute. "[T]he public policy considerations must be strong and of a *fundamental* nature to justify overriding the chosen law of the parties." *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill.App.3d 755, 109 Ill.Dec. 90, 93, 509 N.E.2d 751, 754 (1987) (emphasis added). The Illinois cases raise no such "fundamental" policy considerations against the *Garrity* rule. In fact, Illinois appears to disfavor arbitral awards of punitive damages. *See Edward Elec. Co. v. Automation, Inc.*, 229 Ill.App.3d 89, 171 Ill.Dec. 13, 23, 593 N.E.2d 833, 843, *app. denied*, 146 Ill.2d 625, 176 Ill.Dec. 796, 602 N.E.2d 450 (1992) (punitive damages may not be awarded in arbitration unless "the parties have expressly agreed to the arbitrators' authority to award punitive damages").

In Illinois, "[a] second recognized limitation to an express choice of law provision is the requirement that there be some relationship between the chosen [law] and the parties or the transaction." *Potomac Leasing*, 109 Ill.Dec. at 93, 509 N.E.2d at 754. Shear-

son has conceded that the most significant contacts in this case were outside New York. That fact might be decisive if there were no contractual choice of law provision. However, as we observed in *Sarnoff*, 798 F.2d at 1082, it is reasonable for a corporation with far-flung interests to bargain for the law of its headquarters state. New York law is reasonably related to the parties because Shearson's principal place of business is New York. *See Janice Doty Unlimited, Inc. v. Stoecker*, 697 F.Supp. 1016, 1019–20 (N.D.Ill. 1988); *ISC–Bunker Ramo Corp. v. Altech, Inc.*, 765 F.Supp. 1310, 1335–36 (N.D.Ill. 1990). The district court correctly applied New York law as the governing law of the agreement.

### IV. Predispute waiver of punitive damages

■ The plaintiffs argue that a predispute waiver of punitive damages is void under the public policies of Texas and Illinois. This argument was not raised in the district court. Accordingly, it has been waived on appeal. *See Resolution Trust Corp. v. Juergens*, 965 F.2d 149, 153 (7th Cir.1992).

### CONCLUSION

Federal policy "favor[s] arbitration agreements," *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. at 941, not "arbitration" *per se*. The plaintiffs-appellants cannot avoid their own choice of governing law. The district court's order vacating the award of punitive damages and denying the plaintiffs' motion in the alternative for a trial on the punitive damage claims is *affirmed*. Costs shall be awarded to the appellees.