In re ESTATE OF Ossie L. SANDEFUR, Richard P. Scaletty, Personal Rep., Respondent–Appellant

v.

Mark S. GREENWAY, Appellant–Respondent.

No. WD 49092.

Missouri Court of Appeals, Western District.

March 28, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1995.

Application to Transfer Denied June 20, 1995.

Richard P. Scaletty, Independence, for appellant.

Ray Edward Sousley, Kansas City, for respondent.

Before SPINDEN, P.J., and
LOWENSTEIN and ELLIS, JJ.

LOWENSTEIN, Judge.

In this appeal from a circuit court decision asking to confirm an arbitration award in favor of a customer against her stockbroker, under § 435.400, RSMo 1994 (all further statutory references will be to the Revised Statutes of 1994), there are two issues presented: 1) may the courts vacate an arbitration award on a mistake of law theory because the arbitrators failed to grant a set-off of the damages as allowed by statute, (§ 537.060), for dollars received from a joint wrongdoer?; and 2) may arbitrators award punitive damages where the arbitration contract between the parties says nothing about the power to award such damages?

Both sides have appealed the judgment entered by the trial court, § 435.415, which vacates the award of actual damages due to a necessary offset (the customer was Ossie Sandefur who died before the award was granted. Her personal representative was substituted, and will be referred to as Sandefur), but affirms the imposition of punitive damages against the broker, Mark Greenway (Greenway). Since there was no transcript of the arbitration proceedings, nor stipulated facts provided, the court takes the facts from the award. *Lorenzini v. Group Health Plan, Inc.,* 753 S.W.2d 106, 107 (Mo.App.1988).

In 1986, Sandefur opened a stock trading account with Greenway. In 1987, Greenway affiliated offices with Shearson Lehman Brothers, Inc. (Shearson). Sandefur, who was in her seventies, had recently lost her husband, was also suffering from breast cancer. She told Greenway she wanted to preserve her investment (about $200,000), while generating sufficient income from interest and dividends to provide her with enough money per month on which to live.

Over the next several years, Greenway made unauthorized and risky securities purchases, churned Sandefur's account with needless trades and, by forging her name, traded in margin accounts. During this time, Greenway assured Sandefur "everything was fine." Her health and her investments declined. In late 1990, Greenway's securities license was suspended and he left Shearson.

In 1991, pursuant to an arbitration portion of the Sandefur–Shearson customer agreement, Sandefur filed a claim in arbitration against Shearson and Greenway. The arbitration agreement provides, in pertinent part:

23. ARBITRATION AND GOVERNING LAW. This agreement shall be governed by the laws of the State of New York without giving effect to the choice of law or conflict of laws provided thereof. Any controversy arising out of or relating to any of my accounts, to transactions with you, your officers, directors, agents and/or employees for me, or to this agreement, or the breach thereof, or relating to transactions or accounts maintained by me with any of your predecessor firms by merger, acquisition or other business combination from the inception of such accounts, shall be settled by arbitration, in accordance with the rules then in effect of the NASD, or the Boards of Directors of the NYSE or the American Stock Exchange, Inc., as I may elect. If I do not make such election by registered mail addressed to you at your main office within 5 days after demand by you that I make such an election, then you will have the right to elect the arbitration tribunal of your choice. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Sandefur's claim for an award was in multiple counts alleging securities fraud, common law fraud, forgery and churning. She claimed actual damages of $200,000 and asked for punitive damages of up to $1,000,000. An arbitration panel of three persons was convened under the auspices of the National Association of Securities Dealers Code of Arbitration Procedure (NASD). Just before submission, Shearson settled for $150,000 and was dismissed. The panel heard evidence against Greenway. Sandefur died. The arbitrators awarded the Sandefur estate $149,200 in actual and $150,000 in punitive damages, and assessed costs and fees against Greenway.

When presented to the circuit court for confirmation, § 435.400, the court found the award for $149,200 was subject to set-off under Missouri law, § 537.060, and was, therefore, reduced to zero because of the Shearson settlement. To explain, this meant that because the estate received a settlement from Shearson for $150,000 and the arbitrators had decided the estate's damages were $149,200, her damages had actually been *overpaid* by Shearson's settlement amount. Therefore, the court concluded, if a set-off was allowed, there would be no more damages to be recovered from Greenway. The trial court did indeed find a set-off was allowed. This dismissal of the arbitration award from Greenway prompted the Sandefur appeal. The court went on, over Greenway's continued objections, to confirm and enter judgment, § 435.415, for the award of $150,000 in punitive damages, prompting the Greenway cross appeal.

Before addressing the two points raised in this court, the following abbreviated explanation is presented to show the history and status of Missouri's court review of arbitration awards. The Federal Arbitration Act, 9 U.S.C. Sections 1 et seq. and our state law under the Uniform Arbitration Act, § 435.350–.470, are substantially the same. *Cairo v. Bodine*, 685 S.W.2d 253, 257 (Mo. App.1985). If the underlying suit involves commerce under the Federal Act, Sec. 1 and 2, then the matter must be decided under federal substantive law. *Cairo v. Bodine*, 685 S.W.2d at 257–58; *Boogher v. Stifel, Nicolaus & Co.*, 825 S.W.2d 27, 29 (Mo.App. 1992). The function of arbitration is to be a speedy, efficient and less expensive alternative to court litigation, which is a cornerstone of both the federal and state acts. *Prima Paint Corp. v. Flood and Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967); *Cairo*, 685 S.W.2d at 263. The promise and scope of arbitration are defined by the contract between the parties. *Atkinson v. Sinclair Refining Co.* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). Arbitration proceedings are preferred by the courts which give every favorable intendment in favor of the award, so judicial review of arbitration awards is strictly limited. *Sheffield Assembly of God Church v. American Ins. Co.*, 870 S.W.2d 926, 929 (Mo.App.1994).

Under Missouri's Act (barring the criteria for vacation of an award [1]), arbitration awards are to be confirmed by the courts and given the status of judgments. *Birchtree Financial Services v. Thomas,* 821 S.W.2d 120, 122 (Mo.App.1991). A party challenging the award is not entitled to a resolution on the merits. *Sheffield Assembly of God Church,* 870 S.W.2d at 930. In sum, it is not the function of the courts to determine if the arbitrator decided the grievance correctly, as long as the arbitrator, under the contract to arbitrate, acted within his jurisdiction. *Aircraft Mechanics Fraternal Ass'n. v. Ozark Air Lines Inc.,* 597 F.2d 1155, 1157 (8th Cir.1979); *Armstrong Lodge No. 762 v. Union Pacific R.R. Co.,* 783 F.2d 131, 135 (8th Cir.1986). Federal and state laws concerning the powers of arbitrators, hold them as being set and defined by the contract to arbitrate, and give arbitrators the ability to settle legal as well as factual questions with little interference from the courts, which follows the common law of Missouri concerning review of arbitration awards. *Higgins–Wall–Dyer Co. v. City of St. Louis,* 331 Mo. 454, 53 S.W.2d 864, 866 (Sup.Ct. 1932); *Drake–O'Meara & Associates v. American Testing & Engineering Corp.,* 459 S.W.2d 362, 364 (Sup.Ct.1970); and *Masonic Temple Asso. v. Farrar,* 422 S.W.2d 95, 109 (Mo.App.1967).

## I.

The court now addresses the Sandefur appeal, and will attempt to answer the question of whether the trial court had power to vacate the award on actual damages based on the set-off theory. As Respondent on this point, Greenway strenuously argued to the court that Missouri law applied (allowing for set-off). Admittedly, Missouri law gives an offset or credit for an amount recovered from a joint tortfeasor in a court action. Section 537.060. In this arbitration proceeding, the arbitrators chose to ignore Missouri's offset law. Even though leading to a double recovery of Sandefur's actual damages, the binding arbitration award may not be set aside by a court, even in the court would have taken a different action. Referring back to the only methods of vacatur, as set out in § 435.405 in footnote one, the failure to follow the law as a court would have done, without agreement to do so in the contract, does not afford relief through the courts. *Stifel, Nicolaus & Co. v. Francis,* 872 S.W.2d 484, 486 (Mo.App.1994). Under the binding arbitration contract in the case at bar, the panel was not bound to follow Missouri precedent or law, so the statutory grounds of § 435.405 provide the only method of relief. A disregard for the law is not one of the statutory bases for vacating an award. *See Western Waterproofing Co. v. Lindenwood Colleges,* 662 S.W.2d 288, 291–92 (Mo.App. 1983), (where the dissatisfied party said the arbitrators failed to address Missouri's law relating to contributory negligence); *Stifel,* 872 S.W.2d at 486 (where this court would not allow a claim by a stockbrokerage firm for an unpaid debt to be applied against the award, saying even a "manifest disregard of the law", not being recognized by the statutes to vacate could not be later corrected by the courts.) *Holman v. Trans World Airlines, Inc.,* 737 F.Supp 527, 531 (E.D.Mo. 1989).

Simply put, the parties to an arbitration agreement cannot, absent an abuse of power by the arbitrators, relitigate a matter on the law or facts. *Lorenzini,* 753 S.W.2d at 108; *University of Alaska v. Modern*

---

1. **Vacating an award.**—1. Upon application of a party, the court shall vacate an award where:
    (1) The award was procured by corruption, fraud or other undue means;
    (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
    (3) The arbitrators exceeded their powers;
    (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 435.370, as to prejudice substantially the rights of a party; or
    (5) There was no arbitration agreement and the issue was not adversely determined in proceedings under section 435.355 and the party did not participate in the arbitration hearing without raising the objection;
    but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

*Constr.,* 522 P.2d 1132, 1140 (Alaska 1974). Accordingly, this point is ruled in favor of Sandefur.

## II.

■ In his appeal, Greenway completes a one hundred eighty degree turn in his choice of law selections from his stance in the previous point on offset. On the question regarding the arbitrator's powers to impose punitive damages, he stands before the court relying on the language in the customer-broker contract to apply New York law. This contract with Sandefur, prepared by Greenway's former employer, Shearson, was required to be entered into by anyone trading with Shearson. New York, since 1976, has steadfastly held to the position that punitive damages are solely within the powers and functions of a court, and are **not** within an arbitrator's arsenal. *Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976); *Barbier v. Shearson Lehman Hutton,* 948 F.2d 117 (2d Cir.1991); *Mastrobuono v. Shearson Lehman Hutton,* 812 F.Supp 845 (N.D.Ill.1993); 20 F.3d 713 (7th Cir.1994).

The federal circuits were split on the issue of whether arbitrators had the inherent power to award punitive damages as well as the choice of law question where brokerage firms had by contract with their customers, directed matters to be decided under New York law. *Lee v. Chica,* 983 F.2d 883 (8th Cir. 1993), held the Federal Act, and therefore federal law (which allowed punitive damages), prevailed in these types of contracts since the underlying transaction came within the definition of interstate commerce within the Federal Act. *Id.* at 888. The one distinction between the case at bar and *Lee,* was in *Lee* the contract between the customer and broker selected Minnesota law as its choice of governing law.

The Eleventh Circuit proved to be the precursor of law on this issue in broker-customer contracts, when, in *Bonar v. Dean Witter Reynolds, Inc.,* 835 F.2d 1378, 1386–88 (11th Cir.1988) a customer signing a contract which did not mention punitive damages, but was governed under New York law, "could not have intended to relinquish their right to punitive damages."

The *coup de grace* has just been applied in the final act of the *Mastrobuono's* previously cited litigation against Shearson. In *Mastrobuono v. Shearson Lehman Hutton, Inc.,* —— U.S. ——, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), handed down on March 6, the Court, on facts very similar to those in this case, held for the customer. The customers, husband and wife, opened a securities trading account in 1985 under a contract of almost the same language—New York law was chosen to apply, but no mention was made in the contract about punitive damages. The *Mastrobuono* suit alleged fraud and unauthorized actions by Shearson. Id. at ——, 115 S.Ct. at 1216. Nevertheless, the arbitrators awarded $400,000 in punitive damages. *Id.*

The Court's opinion, with only Justice Thomas dissenting, stated that if parties decided to include punitive damages "within the issue to be arbitrated," the Federal Act ensures that position even if state law (New York) would be contrary. Id. at ——, 115 S.Ct. at 1220. The *Mastrobuono* and Sandefur contracts did not mention punitive damages. As per the contract, both these cases went to arbitration under the NASD Procedures and arbitrator's manual which indicates the panel may "award damages and other relief," Id. at ——, 115 S.Ct. at 1218, which the Court took to mean to allow imposition of punitive damages by not agreeing "... to foreclose claims for punitive damages." Id. at ——, 115 S.Ct. at 1218.

The Court concluded that the New York choice of law language, at most, "introduces an ambiguity into the arbitration agreement that would otherwise allow punitive damages awards," in a case where the Federal Act applies. Id. at ——, 115 S.Ct. at 1218. Accord: *Cairo v. Bodine,* 685 S.W.2d at 263–64; *Boogher,* 825 S.W.2d at 29. The Court finally noted the common law rule of contract that, "ambiguous language [is construed] against the interest of the party that drafted it," and as such, Shearson cannot "now claim the benefit of the doubt." —— U.S. at ——, 115 S.Ct. at 1219. Totally apropos to the case at bar, is the following sentence from *Mastrobuono.* "As a practical matter, it

seems unlikely that petitioners were actually aware of New York's bifurcated approach to punitive damages, or that they had any idea that by signing a standard-form agreement to arbitrate disputes they might be giving up an important substantive right." Id. at ——, 115 S.Ct. at 1219.

In *Mastrobuono*, the Supreme Court answered the Shearson appeal at bar by ruling that the arbitrator panel had the power to award punitive damages. The point is denied.

The judgment on the Sandefur point concerning set-off is reversed, and this court enters judgment in favor of Sandefur. The judgment on punitive damages is affirmed.

All concur.