**In the Matter of Arbitration Between Judy LEE, Appellant/Cross-appellee,**

v.

**James John CHICA; Engler–Budd & Co., Inc., Appellees/Cross-appellants.**

**Nos. 91–3043, 91–3146.**

United States Court of Appeals, Eighth Circuit.

Submitted May 15, 1992.

Decided Jan. 12, 1993.

Rehearing and Rehearing En Banc Denied March 4, 1993.

Graham Heikes, Minneapolis, MN, argued, Max C. Ramsey III, on the brief, for appellant.

Gregory L. Wilmes, Minneapolis, MN, for appellee.

Before McMILLIAN, JOHN R. GIBSON and BEAM, Circuit Judges.

McMILLIAN, Circuit Judge.

Judy Lee appeals from a final order entered in the District Court[1] for the District of Minnesota to the extent that it vacates the punitive damages awarded by an arbitration panel. *Lee v. Chica*, No. 3–91–304 (D.Minn. Aug. 22, 1991) (order). For reversal, Lee argues the district court erred in refusing to confirm the arbitration panel's award of punitive damages because (1) federal law governs the arbitrability of the dispute and (2) the arbitration clause in the Customer Agreement incorporated the rules of the American Arbitration Association (AAA) which allow arbitration panels to award punitive damages.

James John Chica cross-appeals from the district court's final order to the extent that it confirms the arbitration panel's award of compensatory damages and attorney's fees to Lee. For reversal, Chica argues the district court erred in holding that

Lee's claims against him individually were subject to arbitration because he did not sign, and therefore was not a party to the customer agreement. Chica agrees that the district court was correct in denying Lee punitive damages.

For the reasons discussed below, we affirm that part of the district court's order confirming compensatory damages and attorney's fees and reverse that part of the district court's order denying Lee punitive damages.

I. Facts

In 1987 Lee opened a securities account with the now defunct Engler–Budd & Company, Inc. (Engler–Budd), a broker-dealer and member of the National Association of Securities Dealers (NASD). Chica, a NASD registered securities representative, was Lee's original and sole account representative for the entire time Lee had an account at Engler–Budd.

Lee signed a Customer Agreement at the request of Chica when she opened the account. Paragraph 15 of the Customer Agreement contained the following arbitration clause:

This agreement and its enforcement shall be governed by the laws of the State of Minnesota. If any controversy arises out of this agreement, it shall be determined by arbitration, except where prohibited by law. Such arbitration shall be in accordance with the rules, then obtaining, of the American Arbitration Association. I authorize you, if I do not make such election ..., to make such election in my behalf. Any arbitration hereunder shall be before at least three arbitrators and judgment upon the award rendered by the arbitrators or a majority of them may be entered in any court, state or federal, having jurisdiction.

Lee is the only signatory of the Customer Agreement.

A dispute arose concerning the management of the account. In July of 1990, Lee filed a demand for arbitration with the

---

**1.** The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

AAA against Engler–Budd and Chica. Lee alleged that Engler–Budd and Chica had violated the Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b); the Securities Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5; the Securities Act of 1933, 15 U.S.C. §§ 77a–77bbbb; and the Minnesota Securities Act, Minn.Stat. ch. 80A; and also alleged state common law claims of negligence, fraud and breach of fiduciary duty. Lee claimed that Engler–Budd and Chica opened a margin account in her name without informing her of the risks and that Engler–Budd and Chica bought and sold securities in this account without her authorization and failed to follow specific sell orders given by her.

Neither Engler–Budd [2] nor Chica answered the demand for AAA arbitration. Chica made no appearance at the arbitration hearings, did not answer the AAA complaint, nor did he sign the AAA arbitration submission agreement. In December of 1990, the arbitration panel held a hearing on the dispute and awarded Lee $10,600 in compensatory damages, $5,000 in attorney's fees and $31,800 in punitive damages against both Engler–Budd and Chica.

On June 7, 1991, Lee filed an application and motion in federal district court to confirm the arbitration award. Chica filed a cross-motion to vacate or modify the award. The district court confirmed the arbitration award of compensatory damages and attorney's fees, but vacated the award of punitive damages. The district court accepted the argument by Chica that Minnesota law prohibited an award of punitive damages by an arbitration panel. The district court noted that the arbitration clause in the customer agreement had incorporated Minnesota state law as the law to govern the contract. Therefore, the district court reasoned that the parties had intended to limit the scope of recovery in the event of a breach of contract to that which would be allowed by Minnesota law, which, in the view of the district court did not include punitive damages. This appeal and cross-appeal followed.

**2.** Engler–Budd is not a party in this appeal and did not participate in the district court proceedings concerning this matter. Because Engler–

## II. Arbitration

The issues in this appeal involve whether federal or state law applies in interpreting the arbitration clause in the customer agreement and in determining if arbitrators can award punitive damages. Lee argues that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–14, applies in this case because there is federal subject matter jurisdiction and that the FAA specifically applies in cases involving interstate commerce. Chica contends that State law applies because courts are to use state law to interpret the arbitration clause in the contract and to determine the ability of arbitrators to award punitive damages. Each party contends that if the district court applied the law he or she contends is the proper law to apply, it will result in a decision that is favorable to him or her.

### A. Scope of Review of Arbitrators' Awards

■ It is well-settled that judicial review of arbitration awards is narrowly limited and that an arbitration award will not be set aside unless it is completely irrational or evidences a "manifest disregard for law." *E.g.*, *Barbier v. Sherson Lehman Hutton, Inc.*, 948 F.2d 117, 120 (2d Cir. 1991) (*Barbier*); *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1060 (9th Cir.1991) (*Todd Shipyards*); *General Tel. Co. v. Communications Workers of America*, 648 F.2d 452, 457 (6th Cir.1981) (*Communications Workers*) ("Reviewing courts should be extremely reluctant to substitute their interpretation of the agreement for that of the arbitrator.").

### B. Arbitration of Claims Against Chica

The initial question raised is whether the law of Minnesota, governs the arbitrability of this case. Chica argues that he should not be a party to this action because he did not sign the customer agreement and Minnesota law would not enforce the terms of a contract between Lee and Engler–

Budd is not involved in this dispute, it is not necessary to determine Engler–Budd's liability.

Budd against Chica. *Kost v. Peterson*, 292 Minn. 46, 193 N.W.2d 291 (1971). Chica relies on *Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (*Perry*), to argue that the contract is not enforceable against him. The Supreme Court in *Perry* stated in a footnote that when this type of "standing" issue presents itself, courts, in determining whether to apply state or federal law, are to apply state law "*if* that law arose to govern issues concerning validity, revocability, and enforceability of contracts generally." *Id.* at 492 n. 9, 107 S.Ct. at 2527 n. 9 (emphasis in original). Furthermore, the Supreme Court stated that courts are to examine arbitration agreements in the same light they would examine any other contractual agreement. *Id.*

*Perry* involved a dispute over the amount of commissions due on the sale of securities between a former employee and his former employer and two of its employees. The former employee argued that his dispute could be heard by the California courts under the California Labor Code,[3] while the two employees argued that according to the employment contract the dispute had to be heard by an arbitration panel. The former employee argued that the two employees were not parties to the agreement, and therefore lacked "standing" to force him to arbitrate the dispute. *Id.* at 488, 107 S.Ct. at 2524.

While Chica relies on *Perry* for support, his argument is misplaced. In *Perry*, the specific issue was whether the parties could be compelled to arbitrate according to the contract provisions. In contrast, the present case is an action seeking to confirm an award already made by an arbitration panel *in accordance with a provision in a contract.* It is not an issue of validity, revocability or enforceability of the arbitration agreement within the contract.

■ Arbitrability of contracts evidencing interstate commerce is governed by federal substantive law rather than state law. *Southland Corp. v. Keating*, 465 U.S. 1, 15–16, 104 S.Ct. 852, 861, 79 L.Ed.2d 1 (1984) (*Keating*); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (*Cone*); *Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–05, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967) (*Prima Paint*); *Letizia v. Prudential Bache Secur., Inc.*, 802 F.2d 1185, 1187 (9th Cir.1986) (*Letizia*); *Bayma v. Smith Barney, Harris Upham & Co.*, 784 F.2d 1023, 1025 (9th Cir.1986); *see also I.S. Joseph Co. v. Michigan Sugar Co.*, 803 F.2d 396, 399 n. 2 (8th Cir.1986).[4]

■ Federal courts have found that an arbitration agreement between a customer and a brokerage firm can also be binding on the agent who represented or traded in the customer's account even if the agent had not signed the customer agreement. *Letizia*, 802 F.2d at 1188 (nonsignatory employees of brokerage firm are bound by the customer agreement between brokerage firm and customer); *Scher v. Bear Stearns & Co.*, 723 F.Supp. 211, 216 (S.D.N.Y.1989) ("Acts by employees of one of the parties to a customer agreement are equally arbitrable as acts of the principals as long as the challenged acts fall within the scope of the customer agreement."); *Brener v. Becker Paribas Inc.*, 628 F.Supp. 442, 451 (S.D.N.Y.1985) (arbitration clause that called for arbitration of any disputes arising out of the customers' accounts was broad enough to include the agent who

3. Cal.Lab.Code § 229 (West 1971) (actions for wages can be maintained in courts without regard to private arbitration agreements).

4. In *I.S. Joseph Co. v. Michigan Sugar Co.*, 803 F.2d 396, 399 n. 2 (8th Cir.1986), the court noted that an arbitration agreement could be drafted broadly enough so as to give the arbitrator the right to determine arbitrability. The contract provision in this case is an example of such a broad contract provision. Paragraph 15 of the Customer Agreement provides that arbitration is

to be used to resolve "any controversy aris[ing] out of th[e] agreement." It also authorizes the signing party to elect arbitration even if the principal or in this case even if the agent refuses to. Contrast this with the arbitration clause that was considered too narrow to vest arbitrators with the ability to determine arbitrability in the first instance in *Necchi S.P.A. v. Necchi Sewing Mach. Sales Corp.*, 348 F.2d 693, 695–96 (2d Cir.1965), *cert. denied*, 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966).

actually did the transactions); *see also Nesslage v. York Secur., Inc.*, 823 F.2d 231, 233 (8th Cir.1987) (disclosed agents of the broker could enforce an arbitration agreement between the broker and the customer).[5]

In addition, the plain language of the arbitration clause reveals that Lee's claims against Chica are subject to arbitration even though Chica did not sign the customer agreement. The arbitration clause provides that "any controversy aris[ing] out of [the customer] agreement" will be settled by arbitration. It is not disputed that Chica was employed by Engler–Budd, that Lee knew of the employment relationship between Chica and Engler–Budd, and that Chica was responsible for the transactions in Lee's account. All of Lee's allegations against Chica arise out of his actions as Engler–Budd's employee in connection with the management of her account. Thus, we hold that Chica can be compelled to arbitrate Lee's claims against him as the disclosed agent of Engler–Budd, arising out of the customer agreement, even though he did not sign the customer agreement and we affirm the district court's order confirming the compensatory damages and attorney's fees.

### III. Punitive Damages

Lee argues that the district court erred in vacating the punitive damages award. Lee argues that the customer agreement incorporated the rules of the AAA which allow arbitration panels to award punitive damages and that federal courts have upheld arbitral awards of punitive damages.

Lee also contends that Minnesota does not have a clear rule or policy against arbitrators' awarding punitive damages and that Chica's arguments are only speculations and conjectures about the real state of the law.

Chica argues that the district court correctly held that the arbitrators "exceeded their powers" under the FAA 9 U.S.C. § 10(a)(4), by awarding Lee punitive damages. Chica contends Minnesota law and public policy prohibit arbitrators from awarding punitive damages and that, by choosing Minnesota law in the contract, the arbitration panel and any court reviewing the arbitrators' decision must apply Minnesota law as it pertains to the awarding of punitive damages in arbitration. We disagree. The issue of which law to apply to the granting of punitive damages comes from the arbitration clause in the customer agreement which provides that enforcement "shall be governed by the laws of the State of Minnesota" and that "any controversy aris[ing] out of this agreement, ... shall be determined by arbitration ... in accordance with the rules, then obtaining, of the American Arbitration Association."

■ When the choice of law provision in an arbitral clause incorporates the rules of the AAA, some circuits have held, and we agree, that AAA arbitrators may grant any remedy or relief including punitive damages.[6] *See Todd Shipyards*, 943 F.2d at 1063; *Raytheon Co. v. Automated Business Systems, Inc.*, 882 F.2d 6, 11–12 (1st Cir.1989) (*Raytheon*); *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1386–87

**5.** We note that there is dicta in *Flink v. Carlson*, 856 F.2d 44, 46 (8th Cir.1988), which supports Chica's argument that, as an agent for a disclosed principal, he cannot be bound personally by the customer agreement. However, we think the holdings in that case and the present case are distinguishable. In *Flink v. Carlson*, the customer had signed two customer agreements, one opening a margin account, the other a cash account; each contained an arbitration clause. The broker did not sign either customer agreement. There was a separate agreement between the brokerage firm and the individual broker in which the broker agreed to arbitrate any claims against him by a customer or the brokerage firm arising out of his employment. The customer initiated arbitration proceedings against both the brokerage firm and the broker. The brokerage firm asserted a cross-claim against the broker for indemnity or contribution. The customer then dismissed his claim against the broker from the arbitration. The court held that the brokerage firm could not compel the broker to arbitrate its third-party claim against him in the same arbitration proceeding involving the customer's claims against the brokerage firm. *Id.* at 47.

**6.** AAA Rule 43 specifically allows arbitrators to award "any remedy or relief that the arbitrator deems just and equitable," including an award of punitive damages.

(11th Cir.1988) (*Bonar*); *Willoughby Roofing & Supply Co. v. Kajima Int'l, Inc.*, 598 F.Supp. 353, 359 (N.D.Ala.1984) (*Willoughby*), aff'd, 776 F.2d 269 (11th Cir. 1985).[7] Furthermore, there is nothing on the record that indicates that the arbitrators did not address the substantive law of Minnesota in awarding punitive damages.

Even if we accepted as valid Chica's argument that under state law the parties did not agree to arbitrate punitive damages because Minnesota law does not allow an awarding of punitive damages, it would not be dispositive in this case. This case is governed by federal law. *See Raytheon*, 882 F.2d at 11–12; *Bonar*, 835 F.2d at 1386–87; *Willoughby*, 776 F.2d at 270. When the parties, as here, agree to arbitration under the rules of AAA and the arbitration issues involve interstate commerce, the FAA gives force to the rules of the AAA. *See Keating*, 465 U.S. at 1, 104 S.Ct. at 852; *Cone*, 460 U.S. at 1, 103 S.Ct. at 927; *Prima Paint*, 388 U.S. at 395, 87 S.Ct. at 1801.

The Federal Arbitration Act states that an arbitrators award is to be confirmed unless the award can be "vacated, modified, or corrected as prescribed in sections 10 and 11" of the FAA. 9 U.S.C. § 9. Section 10 provides that an arbitrators award can be overturned where the arbitration award was obtained by corruption, fraud, undue means, where there was evident partiality on the part of the arbitrators, where there was misconduct by the arbitrators[8], or where the arbitrators exceeded their power.[9] *Id.* Section 11 provides that an arbitrators award may be modified where there was an evident miscalculation of figures, or a material mistake in describing a person, thing or property referred to in the award, or where the arbitrators issued an award on a subject matter not submitted to them,[10] or where the modification is to correct an imperfection in the matter or form which does not affect the merits of the controversy. *Id.* We see none of the abuses mentioned in sections 10 or 11 of the FAA to be evident in this case.[11]

The award of an arbitration panel is subject only to very limited scrutiny. *Communications Workers*, 648 F.2d at 457; *Minute Maid Co. v. Citrus, Cannery, Food Processing, etc.*, 331 F.2d 280, 281 (5th Cir.1964); accord *Int'l Assn. of Machinists v. Cameron Iron Works, Inc.*, 292 F.2d 112, 119 (5th Cir.), *cert. denied*, 368 U.S. 926, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961). Thus, we reverse that part of the district court order vacating the punitive damage award.

Accordingly, the judgment of the district court is affirmed in part and reversed in part and the case is remanded to the district court for further proceedings consistent with this opinion.

BEAM, concurring in part and dissenting in part.

I join the court in Parts I and II of its opinion. I disagree with the holding that the arbitration panel may award punitive

7. Other courts have held that when an arbitration agreement clearly sets forth that a particular state law applies—and that state does not allow arbitrators to award punitive damages—arbitrators are not free to do so. However, the arbitration clause in those cases did not incorporate the rules of the AAA as in the present case. *See New York Stock Exchange Arbitration between Fahnestock & Co. v. Waltman*, 935 F.2d 512, 518 (2d Cir.1991); *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 353 N.E.2d 793, 386 N.Y.S.2d 831 (1976).

8. Misconduct includes a refusal to postpone arbitration hearings when there is sufficient cause shown to do such, or by refusing to hear evidence that is pertinent and material to the controversy, or any behavior that would result in prejudice to one of the parties. 9 U.S.C. § 10(a)(3).

9. Chica argues that the arbitrators exceeded their power, see arguments *supra*.

10. Chica argues that the arbitrator's award should be modified, because he claims that the subject of punitive damages should not have been submitted to them. See arguments *supra*.

11. Minnesota has adopted the Uniform Arbitration Act (UAA). M.S.A. §§ 572.08–572.30 (1951). The UAA contains language similar to FAA Sections 10 and 11. Thus, our conclusions would be the same if we were to apply the UAA here—which we do not.

damages. Accordingly, I dissent as to Part III.

Lee contends that AAA Rule 43, incorporated into the arbitration agreement by reference, allows the arbitrators to impose punitive damages. The majority agrees and states in footnote six that Rule 43 specifically allows punitive damages. I find no such authority in the words of Rule 43 and certainly no specific reference to punitive damages. The rule in its entirety says:

> The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract. The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation as provided in Sections 48, 49, and 50 in favor of any party and, in the event that any administrative fees or expenses are due the AAA, in favor of the AAA.

Thus, the arbitrator may award "any remedy" deemed "just and equitable." The arbitrator shall grant "compensation" as provided in sections 48, 49 and 50. Rule 43 and sections 48, 49 and 50 say nothing about imposing punishment on a party to an arbitration agreement. Even if punishment could somehow be wedged into the "just and equitable" language, this should not be done in an arbitration setting.

Punitive damages are imposed not to compensate a plaintiff, but to be " 'exemplary, punitive, or vindictive damages [imposed] upon a defendant.' " *Pacific Mut. Life Ins. Co. v. Haslip*, —— U.S. ——, ——, 111 S.Ct. 1032, 1042, 113 L.Ed.2d 1 (1991) (citing *Day v. Woodworth*, 13 How. 363, 371, 14 L.Ed. 181 (1852)). They are not to be "reached in proceedings lacking the basic elements of fundamental fairness." *Id.* at ——, 111 S.Ct. at 1038. These elements are discussed at length in *Haslip*.

As stated, AAA Rule 43 clearly speaks in terms of "remedy or relief" and "compensation" for the arbitration claimant and says nothing about punishing the arbitration defendant. Arbitration is a creature of contract and is carried out under agreed upon rules. Therefore, it is not for the arbitration panel, or for this court, to extend and expand the scope of the proceedings beyond the terms actually agreed upon.

Finally, *Haslip* is about due process and the protections that must be employed for punitive damages to be permissible in any event. In the arbitration setting we have almost none of the protections that fundamental fairness and due process require for the imposition of this form of punishment. Discovery is abbreviated if available at all. The rules of evidence are employed, if at all, in a very relaxed manner. The factfinders (here the panel) operate with almost none of the controls and safeguards assumed in *Haslip*. The proceeding at issue in *Haslip* was conducted in the Alabama state court system with full appellate review. Here, as noted by the opinion of the court, the scope of review of the arbitrator's award is narrowly limited if not almost nonexistent. "[A]n arbitration award will not be set aside unless it is completely irrational or evidences a 'manifest disregard for law.' " Majority Opinion at 4–5 (citations omitted).

This standard of review, of course, almost completely ignores the review required by *Haslip*. Why should less be required in an arbitration proceeding if, indeed, punitive damages are within the scope of AAA Rule 43? The simple answer is that the rule does not contemplate an award of punitive damages. The district court was correct and should be affirmed.

Accordingly, I concur as to Parts I and II of the court's opinion and dissent as to Part III.