*904 MURPHY, Circuit Judge,
dissenting.
Today the court vacates the decision of an experienced labor arbitration council on the basis of its holding that Minnesota has an explicit and dominant public policy against protecting older workers. Our court must defer to an arbitrator’s decision when it draws its essence from the collective bargaining agreement and the arbitrator acted within the scope of its authority, see Homestake Mining Co. v. United Steelworkers of Am. Local 7044, 153 F.3d 678, 680 (8th Cir.1998), and it is not disputed that these prerequisites are satisfied here. The only contested issue is whether the public policy exception to the general rule of deference may be applied. This exception is a very narrow one, see E. Assoc. Coal Corp. v. United Mine Workers of Am., 531 U.S. 57, 63, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000), and can only be invoked if the arbitrator’s decision violated a “well defined,” “dominant,” and “explicit” public policy. W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). Since it has not been shown that the arbitration decision in this case violated any well defined public policy, I respectfully dissent.
Our jurisdiction over this case is based on the Labor Management Relations Act of 1947, and the congressional preference for private resolution of collective bargaining disputes is a cornerstone of that statute. See 29 U.S.C. § 173(d). It is also well established that judicial review of arbitration awards is extremely limited. Lee v. Chica, 983 F.2d 883, 885 (8th Cir.1993). The deferential standard for reviewing decisions of arbitrators is particularly prized in labor cases because it promotes private settlement of labor disputes. United Paperworkers Int’l Union v. Misco, Inc., 484 U.S. 29, 37, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Collective bargaining agreements typically contain many detailed provisions outlining each party’s rights and responsibilities, yet the parties understand that difficult problems of interpretation are bound to arise. When they have exercised their right to select an arbitrator familiar with the industry to resolve such disputes rather than to rely on the public court system, courts are bound to respect their preference under federal labor law as well as arbitration law. See id. at 37-38, 108 S.Ct. 364.
The Minneapolis chapter of the National Electrical Contractors Association, of which Ace is a member, and Local 292 of the International Brotherhood of Electrical Workers have included an age ratio provision in their collective bargaining agreement for more than sixty years. As part of their bargaining they agreed long ago that a limited number of work opportunities should be reserved for qualified older electricians. This provision offsets other parts of the agreement which permit employers to make unhindered employment decisions without giving any reason. For example, employers may turn down any electrician referred by the hiring hall without explanation and choose which employees to lay off without giving reasons. With awareness that such purely discretionary decisions by employers could impact older workers, the parties agreed on the age ratio provision to ensure that older electricians would not be shut out of job opportunities.
These parties have a longstanding agreement to submit any matter in dispute to arbitration for a final binding decision. They have agreed to use the services of the Council on Industrial Relations for the Electrical Contracting Industry, which is composed of members who represent both employers and unions and who are experienced in the field. The parties have not been indifferent to the requirements of the law against age discrimination. After enactment of the ADEA the Union checked *905 with the agencies charged with its enforcement, initially the United States Department of Labor and then the Equal Employment Opportunity Commission. Both agencies issued opinions upholding the legality of the age ratio provision in this collective bargaining agreement.
The strong preference for private resolution of disputes means that the public policy exception to enforcement of arbitration awards should be strictly and narrowly applied. See E. Assoc. Coal Corp., 531 U.S. at 63, 121 S.Ct. 462. As the Supreme Court explained in W.R. Grace, the public policy exception requires a showing (1) that there is a well defined public policy (2) that the policy is explicit (3) that it is dominant and (4) that it can be ascertained by reference to laws and legal precedents, as opposed to general considerations of supposed interest. 461 U.S. at 766, 103 S.Ct. 2177. The policy asserted here to invoke the narrow exception to the rule upholding arbitration awards is not a well defined public policy, for it is not explicit and it cannot be clearly ascertained by reference to the ambiguous statute on which it is based or to controlling legal precedent.
When Minnesota added age discrimination to the MHRA some ten years after the ADEÁ was enacted, the Minnesota legislature amended its statement of Public Policy in Minnesota Statute § 363A.02, Subdivision 1(a)(1). The declared public policy of the enactment was simply to ensure “freedom from discrimination in employment” because of “age.” The legislature did not attempt to define age discrimination or to describe the problem which it sought to remedy. Age discrimination has generally been perceived as a problem for older workers as opposed to the younger, and the legislature made no statement to indicate that its understanding was different. I submit that no explicit Minnesota public policy against protecting older workers can be found in the statute, and it has not received such an interpretation by any state court or attorney general opinion.
At the time the district court ruled in this case, it did not have the benefit of the Supreme Court’s decision in General Dynamics Land Systems, Inc. v. Cline, 540 U.S. 581, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004), which thoroughly discussed the ambiguity of the term “age discrimination.” The Court ruled against the Cline plaintiffs, who were over 40 years of age but who sought relief against older workers, holding that the ADEA “forbids discriminatory preference for the young over the old” but not the reversé. Id. at 584, 124 S.Ct. 1236. The word “age” is ambiguous, said the Court, but in its “commonly understood narrow sense” the word means “relatively old age.” Id. at 592 n. 5, 124 S.Ct. 1236. The Court considered the extensive legislative history behind the ADEA and concluded that the major problem it revealed was discrimination against older workers. Hearings revealed that younger workers were in a stronger position than their older counterparts in the job market, and there was no evidence that younger workers perceived themselves to be discriminated against to the benefit of older workers. Id. at 589, 124 S.Ct. 1236. After a thorough review of the background that led to the landmark law against age discrimination, the Court concluded that “social history emphatically reveals an understanding of age discrimination as aimed against the old, and the statutory reference to age discrimination in this idiomatic sense is confirmed by legislative history.” Id. at 596, 124 S.Ct. 1236.
Minnesota courts look to decisions of the United States Supreme Court to interpret the MHRA. The Minnesota Supreme Court has stated that it will usually “follow *906 the lead of the United States Supreme Court’s interpretations of federal anti-discrimination statutes.” Huisenga v. Opus Corp., 494 N.W.2d 469, 472 (Minn.1992). Cases brought under the MHRA are considered under the same analytical framework defined under federal law, as the majority concedes in its citation to Chambers v. Metropolitan Property & Casualty Insurance Co., 351 F.3d 848, 855 (8th Cir.2003).
State cases have also relied on other federal law to interpret the wording of the MHRA. E.g., Huisenga, 494 N.W.2d at 472-73 (using Title VII case law to interpret the meaning of “bona fide occupational qualification” under the MHRA); Lang v. City of Maplewood, 574 N.W.2d 451, 453-54 (Minn.Ct.App.1998) (using Americans with Disabilities Act case law to interpret the meaning of “qualified individual with a disability” under the MHRA). Just as the ADEA proscribes discrimination “because of [an] individual’s age,” 29 U.S.C. § 623(a)(1), the legislature proscribed discrimination in employment “because of ... age” in the MHRA, Minn. Stat. § 363A.02, Subd. 1(a)(1). The fact that these prohibitions against age discrimination are worded in almost identical terms is: other evidence that a Minnesota court would interpret age discrimination in the way the Supreme Court interpreted the ADEA in Cline.
There are undoubted differences between the MHRA and the ADEA. In its “statement of findings and purpose” Congress included mention of the disadvantages faced by older workers and the adverse affects on commerce from age discrimination. 29 U.S.C. § 621. The MHRA has a briefer statement of purpose in Minn.Stat. § 363A.02, Subd. 1(a)(1), but its provisions on age discrimination were placed within an existing statutory framework. The MHRA is a general human rights statute, not one devoted to a single area. Age discrimination is only one of the eleven types of employment discrimination which are covered in Minn.Stat. § 363A.08; others include discrimination on the basis of race, sex, and disability. The MHRA also addresses discrimination in areas other than employment, such as housing, public accommodations, and business opportunity.
In such a general purpose statute, the absence of a statement defining age discrimination in employment should not be read as evidence that the legislature did not have the same understanding of the problem as Congress. There is nothing in the record to show that the Minnesota legislature was not motivated by the same concerns that motivated Congress ten years earlier, and no reason to believe that the same type of bias against older workers in employment declined during that period. In defining age discrimination in its 2004 decision in Cline, the Supreme Court looked at both the social context at the time the ADEA was enacted and at the “youth culture” that subsequently developed and concluded that “where younger is better, talk about discrimination because of age is naturally understood to refer to discrimination against the older.” 540 U.S. at 591, 124 S.Ct. 1236.
. By including all persons over the age of majority in § 363A.08, the Minnesota legislature chose to broaden the group of people protected from age discrimination, but that does not necessarily mean that it made a policy choice to protect younger workers to the disadvantage of the older. The statute is at the very least ambiguous in respect to the problem it intended to address. Although Congress chose to protect only workers aged 40 and above, hearings held before the statute’s passage produced evidence that workers under the age of 40 were also being discriminated against *907 by employers who wanted even younger workers. One example was women flight attendants who were being discharged on reaching the age of 32. Id.
Nothing in the language of the MHRA or related to its passage indicates that Minnesota chose to protect young workers at the expense of more vulnerable older workers. Minn.Stat. § 363A.03 “prohibits using a person’s age as a basis for a decision,” but the meaning of that section depends on what was intended by “age.” As shown by the Supreme Court, the meaning of “age” must be understood by considering how it is commonly understood in respect to discrimination. See id. at 598, 124 S.Ct. 1236. In common usage, discrimination on the basis of age means favoring younger individuals over older ones. Id. at 590-91, 124 S.Ct. 1236. Ace’s interpretation of the age discrimination provisions in the MHRA, which has been adopted by the majority, would appear to create a general cause of action for disgruntled employees. Any employee unhappy about an employment decision could sue under it as long as someone of a different age benefited by the employment action. That was not likely the intent of the drafters.
The district court relied on two administrative interpretations by state commissioners to ascertain the contours of Minnesota public policy on age discrimination, for the MHRA is itself ambiguous. There were at the time no judicial decisions construing it, but we now have Cline for guidance. Neither of the two administrative statements points to any precedent — judicial or administrative — to show that their interpretation had been adopted by others who work with the statute, and they should not be accorded undue weight. See Medica Primary v. Central States Health & Welfare Fund, 505 N.W.2d 589, 593 (Minn.1993) (“Where ... the question N one of first impression and the administrative interpretation is not of longstanding, we need not accord that interpretation great weight.”). Commissioner Korbel’s affidavit does nothing more than echo the letter from Commissioner Rosas which simply quoted language from the MHRA and summarily concluded that the parties’ collective bargaining agreement violated § 363A.08 by reserving a small proportion of employment spots for electricians over the age of 50. Without analysis the letter adopted one interpretation of age discrimination, apparently not contemplating any alternatives. The letter was not based on any factual record and did not display the thoroughness of consideration which can make administrative interpretations persuasive. See Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944). For these reasons it does not demonstrate that Minnesota has an explicit, well defined, and dominant public policy against protecting older workers. See W.R. Grace, 461 U.S. at 766, 103 S.Ct. 2177.
Although the text of the MHRA permits the interpretation adopted by the district court, it can also be read in the way endorsed by the arbitration council and consistent with Cline. The circumstances here are not like those in Iowa Electric Light & Power Co. v. Local Union 204, 834 F.2d 1424 (8th Cir.1987), where we applied the public policy exception on the basis of unambiguous nuclear power safety regulations.
The law of Minnesota simply does not provide the clarity necessary to invoke the public policy exception to overcome the strong policies in favor of upholding arbitration awards, particularly when the award is grounded in a collective bargaining agreement. Without a clear statement of a dominant, explicit public policy, we are obligated to defer to the decision of a labor arbitration council to which the parties submitted the dispute and which made a *908 decision drawing its essence from the terms of the collective bargaining agreement without exceeding the scope of its authority.
For these reasons the judgment should be reversed and the matter remanded to the district court with instructions to enforce the arbitration award.