# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3831

_____

| | |
|---|---|
| CD Partners, LLC; <br> CD Developers, LP, <br><br>         Appellees, <br><br>     v. <br><br> Jerry W. Grizzle, acting in scope of his employment as Chief Executive Officer of CDWI [CD Warehouse, Inc.]; Doyle E. Motley, acting within the scope of his employment as Chief Financial Officer of CDWI [CD Warehouse, Inc.]; Gary Johnson, acting within the scope of his employment as Chief Operating Officer of CDWI [CD Warehouse, Inc.], <br><br>         Appellants. | Appeal from the United States District Court for the Southern District of Iowa. |

_____

Submitted: March 14, 2005
Filed: September 23, 2005

_____

Before MURPHY, BYE, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Jerry Grizzle, Doyle Motley and Gary Johnson, three principals in a corporation called C.D. Warehouse, Inc. (CDWI), appeal the district court's order denying their motion to compel arbitration of the tort lawsuit C.D. Partners, L.L.C., filed against them. The lawsuit accuses the three of negligence, negligent misrepresentation, and fraudulent misrepresentation arising out of four franchise agreements between CDWI (franchisor) and C.D. Partners (franchisee). The district court denied the motion on the grounds the three principals were not signatories to the franchise agreements between the two corporations, and the tort lawsuit was not covered by the agreements' arbitration clauses. We reverse and remand for further proceedings.

I

Between 1997 and 1999, CDWI and C.D. Partners signed four franchise agreements[1] to operate retail stores under the name CD Warehouse. The purpose of the agreements was to sell new and used music compact discs (CDs). Each franchise agreement contained an identical arbitration clause which stated, in relevant part: "Except as provided in this Agreement, Franchisor and Franchisee agree that any claim, controversy or dispute arising out of or relating to Franchisee's operation of the Franchised business under the Agreement . . . which cannot be amicably settled shall be referred to Arbitration in accordance with the Rules of the American Arbitration Association." In addition, each franchise agreement provided "nothing in this Agreement is intended, nor shall be deemed, to confer upon any Person or legal entity other than Franchisee, Franchisor, Franchisor's officers, directors, and employees . . . any rights or remedies under or by reason of this Agreement." In each instance, the agreements were signed by David Gott on behalf of C.D. Partners and Jerry Grizzle on behalf of CDWI.

---

[1]The four franchise agreements relate to retail stores in Iowa City, Iowa; Cedar Rapids, Iowa; Waterloo, Iowa; and Maryland Heights, Missouri.

In April 2000, a contractual dispute arose between the two corporations. C.D. Partners filed suit against CDWI in Iowa state court. CDWI removed the action to federal district court, where it was subsequently stayed pending arbitration pursuant to the arbitration clauses in the parties' franchise agreements. The arbitration was never held, however, because CDWI filed for bankruptcy.

In May 2003, C.D. Partners filed this suit in Iowa state court. Whereas the first suit sounded in contract and was brought directly against the corporation CDWI, the second suit sounded in tort and was brought directly against the three individuals who comprised CDWI's primary management – Jerry Grizzle, its president and Chief Executive Officer (CEO); Doyle Motley, its Chief Financial Officer (CFO); and Gary Johnson, its Chief Operating Officer (COO). The complaint alleged negligence, negligent misrepresentation, and fraudulent misrepresentation.

The complaint alleged Grizzle was negligent in nine specific ways, all related to the operation of the franchises (for example, failing to protect the exclusive territories under the franchise agreements, failing to make improvements to point-of-sale software, failing to provide suitable and timely financing for capital improvements to the stores). Similarly, the negligence allegations against Motley and Johnson all related to the operation of the franchises. The negligent misrepresentation count alleged all three defendants provided C.D. Partners with false information to influence the franchise transactions between the parties, which caused damage to C.D. Partners. The fraudulent misrepresentation count alleged all three defendants knew certain representations they made were false, and that they intended to deceive C.D. Partners.

The three principals removed the case to federal district court and filed a motion to compel arbitration pursuant to the franchise agreements between C.D. Partners and CDWI. They argued they could enforce the arbitration clauses between the two corporations – notwithstanding the fact they were not signatories to the

agreement – because the tort allegations against them arose from the contractual relationship between the two corporations, and the claims against them arose from the duties they performed while acting as officers of the signatory, CDWI. C.D. Partners resisted the motion, contending the three principals could not enforce the arbitration clauses because they were not signatories and the tort claims against the officers did not fall within the scope of the arbitration clauses.

The district court denied the motion to compel arbitration concluding "neither the claims nor damages sought in this case are the same as those sought against the corporation in that earlier lawsuit." Grizzle, Motley and Johnson filed this timely appeal.

II

We review de novo the denial of a motion to compel arbitration. Telectronics Pacing Sys., Inc. v. Guidant Corp., 143 F.3d 428, 430 (8th Cir. 1998). "[A]ny doubts raised in construing contract language on arbitrability 'should be resolved in favor of arbitration.'" Id. at 430-31 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). Grizzle, Motley and Johnson contend they can enforce the arbitration clauses in the franchise agreements between CDWI and C.D. Partners despite their status as nonsignatories. We agree.

A nonsignatory can enforce an arbitration clause against a signatory to the agreement in several circumstances. One is when "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999) (quoting Boyd v. Homes of Legend, Inc., 981 F. Supp. 1423, 1432 (M.D. Ala. 1997)). Another is "when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written

agreement in asserting [its] claims' against the nonsignatory." Id. (quoting Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir. 1993)). "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." Id. (internal quotations omitted).

We believe both circumstances are present here. The relationship between signatory CDWI and the nonsignatory appellants is a close one. The tort allegations against the three appellants all arise out of their conduct while acting as officers of CDWI. Evisceration of the underlying arbitration agreement will be avoided only by allowing the three principals to invoke arbitration. Similarly, C.D. Partners's claims against the three appellants rely upon, refer to, and presume the existence of the written agreement between the two corporations. Thus, arbitration is appropriate.

The authority cited by C.D. Partners is inapposite. For example, Flink v. Carlson, 856 F.2d 44 (8th Cir. 1988), involved a signatory attempting to force a nonsignatory into arbitration. See id. at 46-47 (affirming district court's stay of arbitration of a brokerage house's claims against the individual representative who was not a signatory to the agreements in question); see also Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 131-32 (2d Cir. 2003) (affirming district court's grant of a preliminary injunction enjoining an investor from proceeding with arbitration against fund advisor who had not agreed to arbitration).

This is not such a case. This is a case where a nonsignatory with a close relationship to a signatory wants the other signatory to arbitrate a claim. The test for determining whether a nonsignatory can force a signatory into arbitration is different from the test for determining whether a signatory can force a nonsignatory into arbitration:

-5-

> [I]t matters whether the party resisting arbitration is a signatory or not.
> . . . [A] willing nonsignatory seeking to arbitrate with a signatory that is
> unwilling may do so under what has been called an alternative estoppel
> theory which takes into consideration the relationships of persons,
> wrongs, and issues, [b]ut a willing signatory seeking to arbitrate with a
> *non*-signatory that is unwilling must establish at least one of the five
> theories described in [Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64
> F.3d 773, 776 (2d Cir. 1995)].

Merrill Lynch, 337 F.3d at 131 (internal citations and quotations omitted). The courts clearly recognize a nonsignatory's ability to force a signatory into arbitration under the "alternative" estoppel theory when the relationship of the persons, wrongs and issues involved is a close one. See, e.g., Astra Oil Co. v. Rover Navigation, Ltd., 344 F.3d 276, 279-80 (2d Cir. 2003) (holding a nonsignatory may compel arbitration against a signatory to an arbitration agreement because of nonsignatory's close affiliation with the other signatory party to the agreement).

The dissent relies upon a case not cited by C.D. Partners, McCarthy v. Azure, 22 F.3d 351(1st Cir. 1994), arguing it is better reasoned than the cases we have cited and on point. We respectfully disagree McCarthy is on point. McCarthy turned primarily on the fact the agreement at issue was a purchase agreement, a "one-shot transaction" where the only act the nonsignatory performed for the corporate signatory was that of signing the purchase agreement itself. 22 F.3d at 357. The First Circuit specifically distinguished such an instance from those instances in which the contracting parties "contemplate[] an ongoing relationship in which the [signatory's] promises only can be fulfilled by future (unspecified) acts of its employees or agents stretching well into an uncertain future." Id. (distinguishing Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, 7 F.3d 1110, 1121 (3d Cir. 1993) (allowing nonsignatories to enforce an arbitration clause for a dispute arising out of an ongoing service contract); Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1360 (2d Cir. 1993)

(same); <u>Letizia v. Prudential Bache Sec., Inc.</u>, 802 F.2d 1185, 1188 (9th Cir. 1986) (same)).

Here, we do not have "a one-shot transaction in which the purchaser's obligations are specified and are, essentially, performed in full at the closing, or soon thereafter." <u>Id.</u> This case involves an ongoing relationship where signatory CDWI's promises could only be fulfilled by the future conduct of its corporate officers, employees, and agents. The current dispute between signatory C.D. Partners and nonsignatories Grizzle, Motley, and Johnson arises out of and relates directly to the contractual agreement between the signatories, where the core of the dispute is the conduct of the three nonsignatories in fulfilling signatory CDWI's promises. Thus, the situation here is inapposite to the one addressed in <u>McCarthy</u>, and similar to the situations addressed in <u>Pritzker</u>, <u>Roby</u>, and <u>Letizia</u>, where the courts allowed nonsignatories to enforce an arbitration clause.

The dissent also implies the franchise agreements involved here were not drafted skillfully enough to include CDWI's officers within the ambit of the arbitration clause. We respectfully disagree. Each agreement's arbitration clause was drafted broadly to cover every "claim, controversy or dispute arising out of" the operation of the franchise. Each agreement further provided nothing in the agreement would be deemed to confer rights or remedies upon anyone "other than Franchisee, Franchisor, Franchisor's officers, directors, and employees, . . .." By necessary implication, then, each agreement intended to confer its rights or remedies – including the right to arbitrate – upon "Franchisor's officers, directors, and employees." Under the circumstances involved in this case, it is clearly appropriate to allow the nonsignatories to enforce the arbitration agreement against signatory C.D. Partners.

III

Grizzle, Motley and Johnson further contend the tort suit filed against them by C.D. Partners is covered by the arbitration clauses in the franchise agreements between CDWI and C.D. Partners. We agree.

The arbitration clauses in the franchise agreements are worded broadly to cover "any claim, controversy or dispute arising out of or relating to Franchisee's operation of the Franchised business under the Agreement." There is a strong national policy in favor of arbitration. Dobbins v. Hawk's Enters., 198 F.3d 715, 717 (8th Cir. 1999). As a consequence, doubts about whether an arbitration clause should be construed to cover a particular dispute are generally resolved in favor of arbitration. Telectronics, 143 F.3d at 430. Broadly worded arbitration clauses such as the ones at issue here are generally construed to cover tort suits arising from the same set of operative facts covered by a contract between the parties to the agreement.

For example, in P & P Industries v. Sutter Corp., 179 F.3d 861 (10th Cir. 1999), the Tenth Circuit addressed an arbitration clause in an exclusive agency agreement between a manufacturer and marketer. The arbitration clause provided "[a]ny controversy, claim, or breach arising out of or relating to this Agreement" shall be arbitrable. Id. at 871. The court held the arbitration clause was broad enough to encompass tort claims where the marketer's allegations of improper conduct against the manufacturer were limited to actions taken in connection with the manufacturer's decision to terminate the agreement. Id.[2]

_____

[2] Citing Lee v. Chica, 983 F.2d 883 (8th Cir. 1993), the dissent contends P & P Industries is inapposite on the issue whether "arising out of" language in an arbitration clause is broad enough to cover tort claims because P & P Industries involved the confirmation of an arbitration award rather than a motion to compel arbitration. We respectfully disagree. The distinction made in Chica between compelling arbitration and confirming an arbitration award addressed whether state

Similarly, in <u>Gregory v. Electro-Mechanical Corp.</u>, 83 F.3d 382 (11th Cir. 1996), the Eleventh Circuit addressed a provision in a stock purchase agreement which provided for arbitration of all disputes "arising hereunder." The court held the arbitration clause required arbitration not only of the seller's contract claims, but of all claims asserted in the seller's complaint – including fraud, fraudulent inducement, deceit, misrepresentation, conversion, breach of good faith and fair dealing, and outrage – because all the tort claims were "disputes that originate[d] out of or ha[d] a connection with th[e] underlying agreement." <u>Id.</u> at 383; <u>see also</u> <u>Kroll v. Doctor's Assocs.</u>, 3 F.3d 1167, 1170 (7th Cir. 1994) ("[A] plaintiff may not avoid an otherwise valid arbitration provision merely by casting its complaint in tort. The touchstone of arbitrability in such situations is the relationship of the tort alleged to the subject matter of the arbitration clause.") (internal quotations and citations omitted); <u>Acevedo Maldonado v. PPG Indus.</u>, 514 F.2d 614, 616 (1st Cir. 1975) ("The contracts provide for arbitration of 'any controversy or claim arising out of or relating to this Agreement or the breach thereof'. Broad language of this nature covers contract-generated or contract-related disputes between the parties however labeled: it is immaterial whether claims are in contract or in tort[.]").[3]

_____

or federal law applies when deciding if a party has standing to challenge the validity, revocability, or enforceability of an arbitration clause. <u>Chica</u>, 983 F.2d at 886 (citing <u>Perry v. Thomas</u>, 482 U.S. 483, 492 n.9 (1987)). In this case, we have already determined Grizzle, Motley, and Johnson have standing to enforce the arbitration clause. <u>Chica</u> does not stand for the proposition we apply different rules of contract interpretation to an arbitration clause when we have already determined a dispute is arbitrable.

[3]The dissent contends our reliance upon <u>Gregory v. Electro-Mechanical Corp.</u> and <u>Kroll v. Doctor's Associates</u> is misplaced because those cases did not involve a nonsignatory. Once again, we respectfully disagree. The issue whether nonsignatories can enforce an arbitration clause is entirely separate and distinct from the issue whether the phrase "arising hereunder" is broad enough to encompass tort claims arising from the same set of operative facts covered by a contract employing that phrase in its arbitration clause. Thus, <u>Gregory</u> and <u>Kroll</u> do not have to involve

In this case, the tort claims against the three appellants had their genesis in, arose out of, and related to C.D. Partners's operation of the franchises under the franchise agreements.  Thus, the tort claims stated in this lawsuit are subject to the arbitration clauses.

## IV

Finally, the arbitration clauses provide the "[a]rbitration shall take place at Franchisor's principal place of business in Oklahoma County, Oklahoma." Notwithstanding its agreement to the contrary, C.D. Partners contends the arbitration should take place in Iowa because Section 4 of the Federal Arbitration Act (FAA) provides the "hearings and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4.  C.D. Partners therefore requests us to require the district court on remand to order the arbitration to take place in Iowa rather than Oklahoma.

The district court did not require the parties to undergo arbitration, so there is no order compelling the arbitration to take place in either Iowa or Oklahoma.  Thus, this issue is not ripe for our review at this time, and we leave it to the district court to address in the first instance on remand.

## V

We reverse the district court's order denying the motion to compel arbitration and remand for further proceedings.

---

a nonsignatory to be persuasive.

SMITH, Circuit Judge, dissenting.

I believe that the district court properly refused to compel arbitration in C.D. Partner's case against Jerry Grizzle, Doyle Motley, and Gary Johnson, and, therefore, respectfully dissent. First, I note that this circuit has yet to decide whether, or under what circumstances, non-signatories to a contractual agreement can enforce an arbitration clause. The majority does not rely on any controlling Eighth Circuit precedent, and cites no other factually similar case. The Eleventh Circuit precedent relied on by the majority invokes the doctrine of equitable estoppel, a theory not argued here; and in *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 948 n.4 (11th Cir. 1999), the court noted that the arbitration clause at issue specifically included claims arising out of the tort of fraud. The arbitration clause at issue in this case does not have such language and is specifically limited to claims arising under the Agreement. Indeed, the majority notes that the relationship necessary to apply the Eleventh Circuit precedent is "a close one."

I agree that there is a strong national policy in favor of arbitration. However *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861 (10th Cir. 1999), relied on by the majority, involved the confirmation of an arbitration award, and, therefore, is inapposite. *See Lee v. Chica*, 983 F.2d 883 (8th Cir. 1993) (explaining that being compelled to arbitrate differs from confirming an arbitration award). Likewise, the majority's reliance on *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 383 (11th Cir. 1996), which merely interpreted the phrase "arising hereunder," is misplaced as it did not involve a non-signatory. *See also Kroll v. Doctor's Assocs., Inc.,* 3 F.3d 1167 (7th Cir. 1993) (situation did not involve a non-signatory).

I find the factually similar case of *McCarthy v. Azure*, 22 F.3d 351 (1st Cir. 1994), to rest on a stronger foundation with better reasoning. In *McCarthy*, the First Circuit held that a corporate officer, who signed an agreement containing an arbitration clause in his official capacity, could not compel arbitration of claims

-11-

lodged against him as an individual. *McCarthy, Id*. at 363. *McCarthy* rightfully encourages skillful drafting of agreements as the proper means for including officers in the ambit of an arbitration clause. "A corporation that wishes to bring its agents and employees into the arbitral tent can do so by writing contracts. . . that will specify the desired result." *Id*. at 360. *McCarthy* is on point and well reasoned.

I respectfully dissent.

_____